[No. B052388. Second Dist., Div. Three. Sept. 22, 1992.]

MARY L. ENGLE, Plaintiff and Appellant, v.
HAROLD ENDLICH, Defendant and Respondent.

COUNSEL

Oring, Margolese & Schulte and Vana Parker Margolese for Plaintiff and Appellant.

Daniels, Baratta & Fine and Mark R. Israel for Defendant and Respondent.

OPINION

**CROSKEY, Acting P. J.**—Mary L. Engle (plaintiff) appeals from that portion of the judgment entered on August 7, 1990, reducing the amount of the jury award in her favor by the amount of workers' compensation benefits paid on her behalf.[1]

As we conclude that a plaintiff's personal injury award is properly reduced by (1) the amount of any sums received from a settling defendant and, (2) under *Witt* v. *Jackson* (1961) 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641] and its progeny, the amount of any workers' compensation benefits received from a concurrently negligent employer (up to the amount of the employer's proportionate share of liability), we affirm the judgment. This result is unaffected by the fact that the injured plaintiff may have acquired, by assigment, a lien for the compensation benefits on which the *Witt* v. *Jackson* offset defense is based.

### PROCEDURAL AND FACTUAL STATEMENT

On June 26, 1986, plaintiff filed a complaint against defendants Coast Elevator Company (Coast) and Dr. Harold Endlich (Endlich) for recovery of damages for personal injuries allegedly sustained on July 1, 1985. The first cause of action for negligence was directed against Endlich. It alleged that he was aware the elevator machinery in the closet where he parked his bicycle leaked oil; when he took the bicycle out of the closet, the bicycle tracked oil in the hallway that was the main entrance and exit to the Radiology Department at Granada Hills Community Hospital (Hospital);[2] and plaintiff slipped and fell on the oil. The second cause of action for negligence was against Coast for improper maintenance, operation, repair, design, manufacture and installation of the elevator equipment.

---

[1]The judgment was signed on August 3 but not entered until August 7, 1990. We deem the appeal to have been taken from the judgment entered on August 7, 1990, albeit the notice of appeal refers to the judgment "entered" August 3, 1990. We dismiss as nonappealable plaintiff's purported appeal from the prejudgment orders dated June 21, 1990 and July 12, 1990.

[2]Hospital was not named as a defendant or, apparently, sued as a Doe. However, it was made a party to the case in a subsequent cross-complaint filed by Endlich.

In his answer filed November 19, 1987, Endlich denied the material allegations of the complaint and asserted various affirmative defenses, including one based on the contention the actions of plaintiff's employer, Hospital, were the sole proximate cause of plaintiff's injuries, and thus, any recovery against Endlich was barred under the doctrine of *Witt* v. *Jackson, supra*, 57 Cal.2d 57.

On May 6, 1987, Insurance Company of North America (INA), Hospital's workers' compensation carrier, filed a complaint in intervention with regard to the compensation benefits it had paid on behalf of plaintiff. On November 19, 1987, Endlich filed a cross-complaint against Hospital for express contractual indemnity and against Coast for indemnity, comparative liability and premises liability.

On September 2, 1988, the court held a hearing on a proposed good faith settlement. Plaintiff agreed to enter into a settlement with Coast for the total sum of $400,000. The terms of the settlement provided, "[T]hat $400,000 [to be paid in settlement] is inclusive of the lien [originally held by INA] which has been purchased by the plaintiff [for the sum of $95,000]." INA, plaintiff, and Coast stipulated that there was a waiver of all lien claims for reimbursement of medical benefits paid on behalf of plaintiff, inter alia. Upon payment of the $95,000, INA would dismiss its intervention complaint. Endlich stipulated that plaintiff's settlement with Coast was in good faith and waived the right to a hearing under section 877.6 of the Code of Civil Procedure. Thereafter, INA filed a dismissal with prejudice of its complaint in intervention. The case went to trial against Endlich alone.

On June 13, 1990, the jury returned special verdicts in favor of plaintiff. Among the matters the jury had been asked to consider was the percentage of responsibility of each of the original defendants, as well as Hospital, the plaintiff's employer. It found that the settling defendant, Coast, was free of negligence but that Endlich and Hospital were each 50 percent negligent. The jury also found that such negligence was the proximate cause of plaintiff's injuries. The total amount of damages suffered by plaintiff was found to be in the sum of $802,851.

On June 21, 1990, following a hearing, the court granted the motion of Endlich for reduction of the judgment in the amount of the workers' compensation lien. The court ruled the judgment in the total sum of $802,851 was to be reduced by $400,000, the amount of the Coast settlement, and by $370,000 for the workers' compensation lien, which left a net judgment of $32,851. On the same date, the court ruled on Endlich's cross-complaint

against Hospital and found that, pursuant to a written agreement of indemnification between them, they were required to share the burden of the judgment equally.[3]

On July 3, 1990, plaintiff filed a motion for reconsideration of the court's order that Endlich was entitled to an offset of $370,000 against the jury award. She argued the credit was invalid under the law since she had paid valuable consideration (i.e., $95,000) for the workers' compensation lien, and thus the amount thereof did not constitute an impermissible "double recovery" on her part. She also claimed the $370,000 credit was already part of the $400,000 credit allowed against her judgment by reason of Coast's good faith settlement. Alternatively, plaintiff argued the amount of the credit was erroneous. She urged the correct amount should be $326,835.65, which included $168,707.28 for medical expenses and $158,128.37 for disability benefits, minus the $95,000 plaintiff paid INA for the lien. These motions were denied on July 12, 1990, except that the court did recalculate the amount of the compensation benefits and found them to be in the sum of $326,835.65.[4]

As a result of the trial court's rulings, it was determined that the judgment against Endlich was to be reduced by not only the $400,000 paid by Coast, pursuant to the good faith settlement, but also by the amount of the compensation benefits (i.e., $326,835.65) pursuant to the offset allowed under *Witt* v. *Jackson*. These sums were deducted from the $802,851 jury award to determine the net amount due on the judgment from Endlich. The total amount of the judgment to be paid, and which was to be shared equally by Hospital and Endlich, was thus in the sum of $76,015.35.

This timely appeal followed.

### ISSUES PRESENTED

The arguments asserted by the parties present four issues for resolution.

1. Was the assignment of the workers' compensation lien to plaintiff permissible?

2. If so, did that assignment preclude an offset of workers' compensation benefits against plaintiff's damage award?

---

[3]Ultimately, this meant that Hospital and Endlich were required to share equally the final amount payable to plaintiff. No issue is raised here as to this part of the trial court's ruling.

[4]Apparently, no issue is raised herein that this is not a correct calculation of the *amount* of such benefits.

3. Is Endlich estopped from asserting such offset?

4. Did the court correctly compute the offset of workers' compensation benefits?

DISCUSSION

1. *Witt v. Jackson Offset*

As demonstrated, *post*, the right of a defendant to interpose an offset under *Witt v. Jackson* is independent of the right, if any, of a workers' compensation lienholder to reimbursement of such benefits under the Labor Code.[5] Plaintiff's attack on the judgment is based primarily on a misunderstanding of this distinction.

For that reason, and before addressing the specific issues raised by the parties, we initially review the parameters of an employee's right to recover for injuries, the remedies available to the employer for reimbursement of benefits paid on behalf of the employee and the nature of the benefit offset.

a. *Right of Employee to Recover for Injuries Against Employer and Third Party Tortfeasors*

"Workers' compensation benefits are the product of a statutory system of employer liability not dependent upon proof of fault. (Cal. Const., art. XIV, § 4.) With certain exceptions not here relevant, an injured employee's only remedy against his employer is a claim for workers' compensation; thus, the employer is generally immune from tort liability. (Lab. Code, § 3601, subd. (a) [now § 3602, subd. (a)].)" (*Arbaugh v. Procter & Gamble Mfg. Co.* (1978) 80 Cal.App.3d 500, 506 [145 Cal.Rptr. 608].) On the other hand, a claim for such benefits does not "affect his or her claim or right of action for all damages proximately resulting from the injury or death against" third party tortfeasors. (§ 3852.)

"Under the rule of *American Motorcycle* [(1978) 20 Cal.3d 578], the joint and several liability of joint tortfeasors is retained. (20 Cal.3d at pp. 586-591.) ■ Thus, except for his *Witt*-type deduction, the third party remain[ed] liable for all of employee's damages, including the portion which represents the extent to which [Labor Code] section 3864 insulates the negligent employer from the comparative responsibility he would otherwise

---

[5]All statutory references are to the Labor Code unless otherwise indicated.

incur."[6] (*Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829, 842-843, at fn. 9. [150 Cal.Rptr. 888, 587 P.2d 684])

However, with the enactment of Proposition 51 (Civ. Code, §§ 1431.1-1431.5), the third party may no longer be held jointly liable for all of the employee's damages. The third party remains jointly liable for all economic damages, but with regard to noneconomic damages the third party's liability is several only and is limited to his or her own comparative fault. (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 604 [7 Cal.Rptr.2d 238, 828 P.2d 140]; Civ. Code, § 1431.2.)

### b. Employer's Right to Reimbursement of Workers' Compensation Benefits Prior to Witt v. Jackson

An employer or its compensation insurance carrier is entitled to recover the benefits paid or owed on behalf of the injured employee. (§§ 3852, 3853, and 3856.) "In the event a third party is liable in whole or in part for the employee's injuries, the Labor Code provides the employer with three basic techniques for obtaining reimbursement from the third party for workers' compensation benefits the employer has paid or become obligated to pay: the employer 'may bring an action directly against the third party (§ 3852), join as a party plaintiff or intervene in an action brought by the employee (§ 3853), or allow the employee to prosecute the action himself and subsequently apply for a first lien against the amount of the employee's judgment, less an allowance for litigation expenses and attorney's fees (§ 3856, subd. (b)).' [Citation.]" (*Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829, 833 [150 Cal.Rptr. 888, 587 P.2d 684].)[7]

### c. Witt v. Jackson: Offset to Preclude Employee's Double Recovery and Bar of Employer's Concurrent Negligence

In *Witt* v. *Jackson, supra,* 57 Cal.2d 57, our Supreme Court held a concurrently negligent employer was barred from reimbursement for any compensation benefits previously paid to the injured employee. The rationale behind this rule was to prevent the employer from taking advantage of its own wrongful conduct. (*Id.* at pp. 72, 73.)

---

[6] "[U]nless there is a written agreement to the contrary, an employer is not obligated to indemnify a third party who has been found liable to an employee who was injured as the result of the joint negligence of the employer and the third party. (Lab. Code, § 3864.)" (*Arbaugh* v. *Procter & Gamble Mfg. Co., supra,* 80 Cal.App.3d at p. 506.)

[7] With regard to the employer's remedies against a third party tortfeasor as encompassed in sections 3850-3864, the reference to "employer" includes the employer's workers' compensation insurance carrier. (§ 3850, subd. (b).)

The *Witt* court then held "[s]ince, however, the injured employee may not be allowed double recovery, his damages must be reduced by the amount of workmen's compensation he received." (57 Cal.2d at p. 73.) This bar against double recovery is the essence of the benefit offset which may be asserted by a defendant in an action by the employee against such defendant.

Our Supreme Court explained: "The central animus of our decision in *Witt* was to obtain an equitable distribution of liability between the negligent employer and the third party tortfeasor. [Citations.] Under the rule of *Witt*, the negligent employer pays workers' compensation benefits to the employee and is denied reimbursement; the third party [defendant] obtains a reduction in his tort liability which corresponds to those benefits; and the employee's net recovery remains unchanged. The effect of *Witt* is thus to allow the third party defendant to 'shift part of the responsibility for the judgment rendered against it to the employer's carrier.' [Citation.]" (*Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd.*, supra, 22 Cal.3d 829, 841.)

### d. *Impact of Comparative Negligence Principles on Witt v. Jackson*

The *Witt* v. *Jackson* rules were modified with the advent of the principles of comparative negligence and indemnity announced in *Li* v. *Yellow Cab. Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] and *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899].

"Applying the principle that the employer and third party should, to the extent consistent with the employer's statutory immunity from tort liability, share the burden of the employee's recovery as joint tortfeasors, [our Supreme Court] conclude[d] that the concurrently negligent employer should receive either credit or reimbursement for the amount by which his compensation liability exceeds his proportional share of the injured employee's recovery. [Citation.]" (*Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd.*, supra, 22 Cal.3d at p. 842.)

### e. *Calculation of Benefit Offset and Amount of Reimbursement Post Witt v. Jackson*

#### (1) *Right of Defendant to Benefit Offset Independent of Employer's Right to Reimbursement*

Even if the employer has not joined as a plaintiff in the employee's action, filed a complaint in intervention or sought to interpose a lien, the defendant is *nonetheless* entitled to seek an offset based on the amount of the

workers' compensation benefits paid or owed on behalf of the employee in order to carry out the double recovery bar of *Witt* v. *Jackson.*

"The third party tortfeasor should be allowed to plead the employer's negligence as a partial defense, in the manner of *Witt.* Once this issue is injected into the trial, the trier of fact should determine the employer's degree of fault according to the principles of *American Motorcycle.* The court should then deduct the employer's percentage share of the employee's total recovery from the third party's liability—up to the amount of the workers' compensation benefits assessed against the employer. Correspondingly, the employer should be denied any claim of reimbursement—or any lien under section 3856, subdivision (b)—to the extent that his contribution would then fall short of his percentage share of responsibility for the employee's total recovery." (*Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd., supra,* 22 Cal.3d at p. 842, fn. omitted.)

In other words, "an employee's damage judgment against third parties must be reduced by an amount attributable to the employer's proportionate share of fault, up to the amount of workers' compensation benefits paid. If the employer's share of fault exceeded the benefits paid or owed, its claim for reimbursement, lien, or credit should be denied. If the benefits paid or owed exceeded the employer's share of fault, the employer should recoup the excess only. [Citations.] Under this formula, third party defendants remained jointly and severally liable to the injured employee for all damages attributable to the employer's fault which were not covered by workers' compensation benefits. [Citations.]" (*DaFonte* v. *Up-Right, Inc., supra,* 2 Cal.4th at p. 599.)

In *DaFonte,* the court held the above rule of joint and several liability was modified with the enactment of Proposition 51: Although a defendant remains jointly and severally liable to the injured employee for all economic damages, the defendant's liability for noneconomic damages is several and limited to defendant's own proportionate share of comparative fault. (*DaFonte* v. *Up-Right, supra,* 2 Cal.4th at p. 604;[8] (Civ. Code, § 1431.2.)

 "[T]he proper method of computing plaintiff's recovery is to first subtract from the total award the proportionate amount attributable to plaintiff's negligence[, if any,] and then to subtract the proportionate amount attributable to the employer's negligence up to the amount of the workers'

---

[8]The *DaFonte* court, however, did not reach the issue of what would be the proper allocation of the benefit offset in a Proposition 51 case. (*Ibid.*) As we explain, *post,* this case does not fall within Proposition 51, and thus, we do not concern ourselves with the resolution of that issue.

compensation benefits paid . . . . [If the employer's] percentage share of responsibility for plaintiff's recovery is greater than the compensation benefits it paid, its . . . claim for reimbursement should be denied." (*Aceves* v. *Regal Pale Brewing Co.* (1979) 24 Cal.3d 502, 512 [156 Cal.Rptr. 41, 595 P.2d 619].)

### (2) *Good Faith Settlement Is Not a Factor*

A good faith settlement by one defendant "shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater." (Code Civ. Proc., § 877, subd. (a).)

■ From the above, it is clear the nonsettling defendant's potential liability is unaffected by the discharge of the settling defendant, unless the settlement provides otherwise. Moreover, the effect of a good faith settlement is to provide an offset against a plaintiff's award in the amount specified or in the amount of the consideration, whichever is more. Thus, the good faith settlement of one defendant does not alter the right of a remaining defendant to assert the benefit offset since the liability of the nonsettling defendant is unaffected thereby; nor does a good faith settlement in any way affect the formula for calculating the amount of such offset.

The amount representing the good faith settlement is deducted from the plaintiff's total award and operates to lessen plaintiff's net recovery against the nonsettling defendants in that amount. However, the good faith settlement does not alter the benefit offset formula, because in calculating the offset, the court measures the employer's degree of fault against plaintiff's *total* award, not the net recovery, to arrive at the employer's percentage share of the employee's recovery. (See, e.g., *Johnson* v. *Cayman Development Co.* (1980) 108 Cal.App.3d 977, 980, 982 [167 Cal.Rptr. 29]; see also, *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd.*, *supra*, 22 Cal.3d at p. 842; *Aceves* v. *Regal Pale Brewing Co.*, *supra*, 24 Cal.3d at p. 512.)

### 2. *Assignment of Workers' Compensation Lien to Plaintiff Is Permissible*

#### a. *Rationale Behind Assignment of a Workers' Compensation Lien*

A workers' compensation insurer may be willing to assign its lien for benefits paid on behalf of an employee/plaintiff for a sum less than face value on the theory a bird in hand is worth two in the bush. This is

particularly true where the insurer may have some concern about the extent of the employer's concurrent negligence in causing the employee's injury. A party who purchases a workers' compensation lien, prior to a judgment against which the lien could be imposed, is speculating that there will be a judgment to which the lien can attach, and that the amount of the lien will exceed the employer's proportionate share of any concurrent negligence. Accordingly, both gamble and can benefit from the assignment of the lien at a discount.

> b. *Assignment of Workers' Compensation Lien to a Plaintiff Is Not Prohibited by the Double Recovery Bar of Witt v. Jackson*

As Endlich concedes, a workers' compensation lien is assignable. (*Hone* v. *Climatrol Industries, Inc.* (1976) 59 Cal.App.3d 513, 523 [130 Cal.Rptr. 770]; *Quinn* v. *Warnes* (1983) 144 Cal.App.3d 309, 314-315 [192 Cal.Rptr. 660]; see also, 2 Witkin, Summary of Cal. Law (9th ed. 1987) Workers' Compensation, § 68, p. 629.) Endlich urges, however, "purchase of the workers' compensation lien by a plaintiff violates the double recovery prohibition of *Witt* [v. *Jackson, supra,* 57 Cal.2d 57]." Although acknowledging no California case has directly decided the validity of the purchase of such a lien by a *plaintiff*,[9] as Endlich asserts, the court in *Quinn* did address the issue. "[Plaintiff's] point is that had he, himself, purchased the lien at a discount, he would be getting a 'double recovery,' at least to the extent the consideration given for the lien was less than its face amount. Such a 'double recovery' to the employee would presumably violate the rule in *Witt.*" (144 Cal.App.3d at p. 318.)

However, we find his reliance on *Quinn* to be misplaced. When viewed in context, it is clear the *Quinn* court was not reaching that issue. Instead, the court was merely attempting to understand the nature of the plaintiff's challenge of the assignment of a lien to a third party who had bought it at a discount.[10]

■ As we have already noted, the rule against double recovery provides, "Since . . . the injured employee may not be allowed double recovery, his

---

[9]We note, however, in *Morris* v. *Standard Oil Co.* (1926) 200 Cal. 210 [252 P. 605], our Supreme Court upheld the assignment of a workers' compensation lien to an employee who brought a separate action to enforce the lien in his capacity as assignee of the lien.

[10]The *Quinn* court pondered: "Appellant [plaintiff] argues that in the instant case the third party (respondent) is getting a 'double recovery' by virtue of the lien assignment . . . . [¶] It is unclear how whatever respondent's insurer (U.S.A.A.) got can be characterized as a 'double recovery.' Possibly, appellant is suggesting that just as *Witt* prevents the employee from getting more than that to which he is entitled, so too should *Witt* prevent a third-party tortfeasor from paying less than that to which he is obligated. [¶] More likely, appellant's point is that had he, himself, purchased the lien at a discount, he would be getting a 'double

damages must be reduced by the amount of workmen's compensation he received." (*Witt* v. *Jackson, supra,* 57 Cal.2d at p. 73; cf. *De Cruz* v. *Reid* (1968) 69 Cal.2d 217, 226-227 [70 Cal.Rptr. 550, 444 P.2d 342].) We see no reason to conclude that this rule bars the assignment of a workers' compensation lien to a plaintiff. When a plaintiff purchases the lien, he or she pays valuable consideration therefor and *steps into the shoes of the employer;* that is, plaintiff is subject to the same defenses which the defendant has against the employer. Thus, in asserting the lien, the plaintiff does so in her capacity as the assignee of the employer or its carrier, not as a "plaintiff."

As a lienholder, plaintiff's right to recoup workers' compensation benefits depends on the employer's degree of concurrent negligence. For example, as we discuss below, if the proportion of the damages owed to plaintiff by the employer due to the latter's percentage of negligence is equal to or greater than the benefits, then the plaintiff, *as lienholder,* will receive nothing under the lien.

However, the identity of the lienholder, whether employer, insurer, defendant or plaintiff, is irrelevant to the separate issue of whether a deduction of workers' compensation benefits from the plaintiff's award is proper to preclude a double recovery. A plaintiff's award must be reduced where the defendant establishes a benefit offset defense pursuant to *Witt* v. *Jackson.* This is true whether or not a lien has been asserted or claimed and irrespective of who owns the lien.

3. *Assignment of Workers' Compensation Lien to Plaintiff Does Not Preclude Offset of Benefits Against Damages.*

■ Plaintiff asserts Endlich is precluded from seeking an offset of the workers' compensation benefits by his stipulation to the good faith settlement of Coast for $400,000. She argues any credit for workers' compensation benefits paid to plaintiff were included in the $400,000 settlement offset. We find no merit in this contention.

The fact plaintiff utilized $95,000 of the $400,000 from the Coast settlement to purchase the subject lien is of no legal significance. Nothing in the record reflects this sum has anything to do with the benefits paid or owed on behalf of plaintiff. Such sum, instead, merely represents the consideration given by plaintiff for the lien. Moreover, the stipulation by Coast, waiving *its* right to assert any benefit offset, was in no way binding on Endlich; nor did

recovery,' at least to the extent the consideration given for the lien was less than its face amount. Such a 'double recovery' to the employee would presumably violate the rule in *Witt.* Therefore, if the purchase by an employee of a lien, at a discount, is a violation of *Witt,* so too should purchase of a lien by the third-party be considered a violation of *Witt.* [¶] In any event, the point is not well taken." (*Quinn* v. *Warnes, supra,* 144 Cal.App.3d at pp. 317-318.)

Endlich, by agreeing that Coast's settlement was in good faith, lose his right to raise a benefit offset defense under *Witt* v. *Jackson*.

Here, Endlich had the right to and did assert that affirmative defense, that is, he was entitled to an offset in "the proportionate amount attributable to the employer's negligence up to the amount of the . . . benefits paid."[11] (*Aceves* v. *Regal Pale Brewing Co.*, *supra*, 24 Cal.3d at p. 512.)

### 4. *No Estoppel to Assert Benefit Offset*

#### a. *Proper Procedure to Determine Offset Was Followed*

■ Plaintiff complains there was no special verdict on the issue of workers' compensation benefits and the respective rights of the employer and employee were never before the jury. She urges Endlich is thus estopped from asserting the benefit offset because no evidence of any "payments" was before the jury or the court prior to entry of judgment. (*Love* v. *Wolf* (1967) 249 Cal.App.2d 822, 843 [58 Cal.Rptr. 42]; *Knox* v. *County of Los Angeles* (1980) 109 Cal.App.3d 825, 834 [167 Cal.Rptr. 463].)

We find no estoppel. Where, as here, the action was prosecuted by the employee alone,[12] "it is clear that the jury is not concerned, in arriving at its verdict, with the rights of the employer and that the verdict and judgment may properly refer only to the plaintiff and to the third party tortfeasor. It is for the court, after judgment has been entered (or concurrently therewith), to make the orders provided for by subdivision (b) of section 3856 [regarding any lien on the judgment for benefits paid or owed]." (*Kuhlmann* v. *Pascal & Ludwig* (1970) 5 Cal.App.3d 144, 150 [85 Cal.Rptr. 199].)

The appropriate procedure for applying a benefit offset under *Witt* v. *Jackson* and its progeny is for the trier of fact, here the jury, initially to determine the employer's degree of fault (*Associated Construction & Engineering Co.*, *supra*, 22 Cal.3d at p. 842) and then for the court, upon motion,

---

[11]Under the former *Witt* rule the benefit offset was in the amount of the benefits provided, and thus, no double recovery was possible. (*Witt* v. *Jackson*, *supra*, 57 Cal.2d at p. 73; see also *Del Monte Corp.* v. *Superior Court*, *supra*, 127 Cal.App.3d at p. 1053 [*Witt* "defense that [defendant] is responsible only for the excess above compensation benefits paid by an allegedly negligent employer"]). However, *post-Witt*, where the employer does not seek recoupment, plaintiff will be entitled to a double recovery to the extent the proportionate amount attributable to the employer's negligence is *less than* the amount of benefits paid. However, this result is simply a function of the employer's failure to assert its clear recoupment right against the third party defendant and does not really constitute a denigration of the policy proscribing a double recovery.

[12]The employer's insurer's complaint in intervention for reimbursement of compensation payments paid to the employee was dismissed before trial.

to determine the amount of the offset (*Quinn* v. *Warnes, supra,* 144 Cal.App.3d at p. 312).

In the present case that procedure was carried out. The jury determined the employer was 50 percent at fault, and the court then determined the appropriate amount of the offset. In fact, in making its determination the court relied on the information supplied by the plaintiff herself regarding the amount of benefits which she received.

### b. *Waiver of Right to Lien by Employer Does Not Bar Right of Defendant to Benefit Offset*

■ Plaintiff further argues "if the employer is negligent and chooses to settle with its employee, and the employee pays consideration for the waiver of any further lien, the employee [should] get[] the benefit of their bargain . . . ."

Plaintiff's argument is without merit. She misapprehends the nature of her purchase. By paying the employer's insurer $95,000, plaintiff purchased the right, if any, of the employer to reimbursement of benefits paid or owed. She thus acquired, by such assignment, the right to a lien against the judgment for recoupment of such benefits to the extent those benefits exceeded the employer's percentage share of her recovery. If the benefits were equal or less than that percentage, plaintiff would receive nothing, which is the case here.

Although she may have paid that sum as "consideration for the waiver of any further lien," the waiver of the lien by the employer or its assignee, here plaintiff, does not preclude the right of a third party tortfeasor, such as Endlich, from asserting a benefit offset under *Witt* v. *Jackson.* Indeed, even the total failure of an employer to seek reimbursement for benefits does not preclude a third party defendant from asserting the bar of double recovery under *Witt* v. *Jackson* and obtaining an offset against the judgment. (See, e.g., *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd., supra,* 22 Cal.3d at p. 842 [as a partial defense]; see also, *Del Monte Corp.* v. *Superior Court* (1982) 127 Cal.App.3d 1049, 1053-1055 [179 Cal.Rptr. 855] [cross-complaint against the employer permitted "in order to facilitate the third party defendant's proof of the employer's negligence where a finding of such negligence would lead to a reduction in plaintiff's award by the amount of compensation benefits paid"].)[13]

---

[13]Thus, no legal significance attaches to the fact the complaint in intervention was dismissed.

### 5. *The Benefit Offset Was Correctly Computed*

#### a. *Since Employer's Percentage Share of Plaintiff's Recovery Exceeded Benefits, the Benefit Offset Equals the Benefit Amount*

Pursuant to the benefit offset defense the court was required to subtract the proportionate amount attributable to the employer's negligence up to the amount of the benefits from plaintiff's total award. As a lienholder, however, plaintiff was entitled to recoup the amount, if any, of the benefits in excess of the employer's percentage share of the plaintiff's award. (*Aceves* v. *Regal Pale Brewing Co.*, *supra*, 24 Cal.3d at p. 512.)

The total award here was $802,851. The employer's percentage of fault was 50 percent. The employer's proportionate amount of the award based on such fault therefore was $401,425.50 (50 percent of $802,851). The amount of the benefits paid or owed was $326,835.65. Thus, the benefit offset exceeded the amount of the benefits, i.e., $326,835.65, and the lienholder, plaintiff, was entitled to zero on the lien.

#### b. *Challenge to Calculation of Workers' Compensation Offset Meritless*

 Plaintiff claims the formula for calculating the offset and the amount of damages recoverable by her was based on the erroneous assumption that both consisted entirely of economic damages. She asserts an employer is not entitled to recover noneconomic damages. She also claims the right to attorney fees for services rendered with regard to the lien. As authority, she relies on *DaFonte* v. *Up-Right, Inc.*, *supra*, 2 Cal.4th 593; *Demkowski* v. *Lee* (1991) 233 Cal.App.3d 1251 [284 Cal.Rptr. 919]; and *Raisola* v. *Flower Street Ltd.* (1988) 205 Cal.App.3d 1004 [252 Cal.Rptr. 726].

We agree that an employer is not entitled to recover noneconomic damages since he or she is only entitled to recovery for the benefits paid or owed. (See §§ 3852, 3853, and 3856.) We also acknowledge that an employee's attorney may be entitled to attorney fees based upon the amount of the lien. (*Raisola* v. *Flower Street Ltd.*, *supra*, at p. 1009; § 3856, subd. (b).)

These principles, however, are of no import in this case. First, the record does not demonstrate that the offset consisted of any particular amount of noneconomic damages. While it may be reasonable to assume that some portion of the award represented such damages, we are left to speculate as to the amount. Second, as the lien amount was zero there was nothing upon

which to base a claim of attorney fees, assuming plaintiff otherwise qualified therefor.

If what plaintiff is seeking to do here is to assert an argument based on Proposition 51 (Civ. Code, §§ 1431.1- 1431.5), then we reject it out of hand. Proposition 51, which mandates apportionment of noneconomic damages based on each tortfeasor's own percentage of fault, is simply inapplicable to this case. This action accrued on July 1, 1985. Proposition 51, which was effective June 4, 1986, is *not* retroactive. (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1192, 1193, fn. 2 [246 Cal.Rptr. 629, 753 P.2d 585].)

Nor can plaintiff assert any credible argument that the $95,000, which she paid for the lien, should be credited against the benefits paid on her behalf. We agree that she had the right to purchase an assignment of the lien. But that did not alter her rights as a plaintiff. She simply stands in the shoes of the lienholder. In this case, in light of the application of *Witt* v. *Jackson* and its progeny, there is no value to the lien which she purchased and she has lost the gamble represented by her $95,000 investment.

### DISPOSITION

The judgment is affirmed. Endlich shall recover his cost on appeal.

Hinz, J. and Danielson, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal, Second District, sitting under assignment by the Chairperson of the Judicial Council.