[No. B224835. Second Dist., Div. Four. Mar. 8, 2012.]

LYDIA SANCHEZ, Plaintiff and Appellant, v.
DARRELL G. BROOKE, as Cotrustee etc., et al., Defendants and
Appellants.

COUNSEL

Steven B. Stevens and M. Lawrence Lallande for Plaintiff and Appellant.

Calendo, Puckett, Sheedy & DiCorrado, Christopher M. Sheedy; Pollak, Vida & Fisher and Daniel P. Barer for Defendants and Appellants.

OPINION

SUZUKAWA, J.—An injured employee (plaintiff Lydia Sanchez, a home health care worker) filed a personal injury action against the trustees of the estate of a third party tortfeasor (the late Dorothea B. Kavanaugh, the elderly woman for whom Sanchez had provided care). The trustees (defendants Darrell G. Brooke and Darryl Denning) asserted as an affirmative defense the comparative negligence of Sanchez and her employer (Glendale Adventist Health, also known as Western Health Resources (Western or employer)). Western, which is not a party to this action, filed a workers' compensation lien against Sanchez's potential recovery.[1]

The jury found that Kavanaugh, Western, and Sanchez all were negligent, but that Sanchez's negligence was not a substantial factor in causing her own injuries. The jury apportioned 50 percent of the fault to Kavanaugh and 50 percent to Western. Based on the jury's finding that Sanchez had sustained total damages of $903,000, the trial court calculated Kavanaugh's share and entered a judgment against defendants for $570,949.87.

Sanchez and defendants filed separate appeals, which we consolidated. In Sanchez's appeal from the order denying her motion for judgment notwithstanding the verdict, she challenges the sufficiency of the evidence to support the finding of employer negligence. We conclude that because the finding was supported by substantial evidence, the motion was properly denied.

■ In defendants' appeal from the judgment, they contend that the judgment should be further reduced to reflect the fact that, under the workers' compensation law, an injured employee's medical expenses must be paid in full by the employer, and the employee is not liable for any unpaid balance.

---

[1] "When an employer claims reimbursement rights because it has paid benefits to an injured worker, it may proceed against a third party tortfeasor by bringing a direct action, by intervening in an action brought by the employee or by filing a lien in an action brought by the employee. (Lab. Code, §§ 3852, 3853, 3856, subd. (b), 3857.)" *Aetna Casualty & Surety Co. v. Superior Court* (1993) 20 Cal.App.4th 1502, 1506–1507 [25 Cal.Rptr.2d 301].) In this case, the employer chose the third option and elected to file a lien without becoming a party to this action.

We conclude that defendants are correct. This case is analogous to and is therefore governed by the California Supreme Court's recent decision in *Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541 [129 Cal.Rptr.3d 325, 257 P.3d 1130] (*Howell*), which was issued while this appeal was pending. The court in *Howell* held that an injured person's recovery of past medical expenses as economic damages was limited to the discounted amount that the medical providers accepted as payment in full from the injured person's private health insurance carrier.

We conclude that the same result applies where an injured employee's medical provider accepts a discounted amount as payment in full from the employer under the workers' compensation law. In both situations, because the injured person/employee is not liable for the undiscounted sum stated in the provider's bill, the unpaid balance does not represent an economic loss to the plaintiff and is not recoverable as damages. We therefore reverse the judgment in part as to the amount of damages only and remand for a limited rehearing and recalculation of damages.

## BACKGROUND

Sanchez, a home health aide employed by Western, was working as Kavanaugh's live-in caregiver when a fire broke out in Kavanaugh's bedroom at around midnight on September 20, 2006. The evidence at trial showed that the fire was caused by Kavanaugh's negligent smoking in bed, and that Sanchez was injured while attempting to rescue Kavanaugh, who died in the fire.[2]

The jury found that Sanchez suffered total damages of $903,000, which included $300,000 in noneconomic damages and $603,000 in economic damages. The jury also found that the economic damages consisted of $575,000 in past medical expenses and $28,000 in lost earnings.

Given that Western was apportioned 50 percent of the liability and had paid $272,622.38 in workers' compensation benefits to Sanchez, the trial

---

[2] On the night of the fire, Sanchez woke up and saw a flickering light in the hallway. She went to investigate and discovered a "big fire on top of" Kavanaugh's bed. Kavanaugh, who was 92 years old, was sitting on the side of the bed. Sanchez tried to pull Kavanaugh from the bedroom, but Kavanaugh, who had limited mobility under normal circumstances, would not cooperate and appeared to be in shock. After being overcome by smoke, Sanchez went to the kitchen to call 911. Sanchez unlocked the front door and went back to the burning bedroom to try to save Kavanaugh. However, Sanchez could not breathe and could not see Kavanaugh through the thick, dark smoke. When firefighters arrived, Sanchez kicked out a window screen and escaped outside.

Sanchez suffered burns on her hands and feet and injuries from smoke inhalation. After surgery, she spent three weeks on a ventilator in intensive care. She then spent two more weeks in a rehabilitation unit where she received speech, occupational, and physical therapies.

court had to determine defendants' share of the total damages of $903,000. Based on the following calculations, the trial court entered a judgment against defendants for $570,949.87.

■ The first calculation addressed the effect of the employer's (Western's) concurrent negligence on a third party defendant's (Kavanaugh's) liability for noneconomic damages. Under Proposition 51 (as codified in Civ. Code, § 1431.2), a finding of employer negligence eliminates a third party defendant's joint and several liability for noneconomic damages attributable to the fault of the employer. (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 596 [7 Cal.Rptr.2d 238, 828 P.2d 140]; *C.J.L. Construction, Inc. v. Universal Plumbing* (1993) 18 Cal.App.4th 376, 387 [22 Cal.Rptr.2d 360].) In light of the jury's apportionment of 50 percent of the liability to Western, the trial court concluded that under Civil Code section 1431.2, defendants are responsible for only 50 percent of the $300,000 noneconomic damages award, or $150,000. Although Sanchez challenges the finding of employer negligence, neither party disputes the mathematical computation of the $150,000 noneconomic damages award.

■ The second calculation addressed the effect of a concurrently negligent employer's (Western's) payment of workers' compensation benefits on a third party defendant's (Kavanaugh's) liability for economic damages. The relevant rule is that because "the injured employee may not be allowed double recovery, his [or her economic] damages must be reduced by the amount of workmen's compensation he [or she] received." (*Witt v. Jackson* (1961) 57 Cal.2d 57, 73 [17 Cal.Rptr. 369, 366 P.2d 641].) Under *Witt v. Jackson* and its progeny, an employee's economic damages award is properly reduced by the amount of any workers' compensation benefits received from a concurrently negligent employer that properly are attributable to economic damages.[3] (*Engle v. Endlich* (1992) 9 Cal.App.4th 1152, 1156 [12 Cal.Rptr.2d 145]; *C.J.L. Construction, Inc. v. Universal Plumbing, supra,* 18 Cal.App.4th at p. 387.) This reduction is commonly referred to as the *Witt v. Jackson* offset. It is calculated by multiplying the workers' compensation benefits by the percentage of the jury verdict attributable to economic damages. The product of that equation (the *Witt v. Jackson* offset) is the amount of the workers' compensation benefits presumptively attributable to economic damages, and is subtracted from the jury's award of economic damages to prevent the injured employee's double recovery. (See *Scalice v. Performance Cleaning*

---

[3] "In *Witt v. Jackson*[, *supra*,] 57 Cal.2d 57 . . . , the California Supreme Court held that an employer could not recover workers' compensation benefits paid if the employer's negligence contributed to the employee's injury. The Supreme Court reconciled this rule with comparative negligence in *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829 [150 Cal.Rptr. 888, 587 P.2d 684]." (*Aetna Casualty & Surety Co. v. Superior Court, supra,* 20 Cal.App.4th at p. 1508, fn. 4.)

*Systems* (1996) 50 Cal.App.4th 221, 225–238 [57 Cal.Rptr.2d 711] [*Witt v. Jackson* offset calculation explained].)

Before calculating the *Witt v. Jackson* offset, the trial court had to resolve the parties' disagreement over the amount of past medical expenses that were recoverable by Sanchez as economic damages. Defendants contended that the jury's award of $575,000 in medical expenses was excessive because it included amounts that were billed to but not paid by Western. Defendants argued that because the medical providers had accepted $241,818.38 from Western (the amount of Western's medical lien) as payment in full, Sanchez's recovery of past medical expenses must be capped at that amount under *Hanif v. Housing Authority* (1988) 200 Cal.App.3d 635, 640 [246 Cal.Rptr. 192] (*Hanif*) and *Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298, 306–307 [112 Cal.Rptr.2d 861] (*Nishihama*).

In *Hanif*, the injured plaintiff's recovery of past medical expenses from the defendant tortfeasor was capped at the amount the medical care provider had accepted from Medi-Cal as payment in full. (*Hanif, supra*, 200 Cal.App.3d at pp. 643–644.) In *Nishihama*, the injured plaintiff's recovery of past medical expenses from the defendant tortfeasor was capped at the amount the provider had accepted from the private health insurer as payment in full. (*Nishihama, supra*, 93 Cal.App.4th at pp. 306–309.)

Based on their view that a *Hanif-Nishihama* reduction is required in this case, defendants argued that Sanchez could recover only $269,818.38 of the $603,000 economic damages award, consisting of $241,818.38 in past medical expenses (the amount of Western's medical lien) and $28,000 in lost earnings, reduced by a *Witt v. Jackson* offset of $129,091.16. Using these reduced figures, defendants calculated a proposed judgment of $290,727.22.[4]

---

[4] According to defendants:

(1) The $603,000 economic damages award must be reduced to $269,818.38 ($241,818.38 medical lien + $28,000 lost earnings = $269,818.38 economic damages).

(2) The $903,000 total damages award must be reduced to $569,818.38 ($269,818.38 economic damages + $300,000 noneconomic damages = $569,818.38).

(3) The $269,818.38 economic damages award is 47.35164 percent of the total verdict ($269,818.38 / $569,818.38 = 0.4735164).

(4) Multiplying the workers' compensation benefits of $272,622.38 by 0.4735164 (the percentage of the total verdict attributable to economic damages) produces a *Witt v. Jackson* offset of $129,091.16 ($272,622.38 x 0.4735164 = $129,091.16).

(5) Adding the (reduced) noneconomic damages award of $150,000 to the economic damages award of $269,818.38, and subtracting the *Witt v. Jackson* offset of $129,091.16, results in a final judgment of $290,727.22 ($150,000 + $269,818.38 - $129,091.16 = $290,727.22).

Based on her view that a *Hanif-Nishihama* reduction is not required in this case, Sanchez argued that she was entitled to the full award of $603,000 in economic damages, consisting of $575,000 in past medical expenses and $28,000 in lost earnings. Using those unreduced figures, Sanchez calculated a proposed *Witt v. Jackson* offset of $182,050.13 and a proposed judgment of $570,949.87.[5]

The trial court adopted Sanchez's calculations and entered a final judgment against defendants for $570,949.87. In rejecting defendants' contention that a *Hanif-Nishihama* reduction is required in this case, the trial court relied on an appellate decision that was reversed while this appeal was pending (see *Howell, supra*, 52 Cal.4th 541).

After judgment was entered, Sanchez moved for judgment notwithstanding the verdict, seeking to overturn the apportionment of fault to Western on the ground that the finding of employer negligence was not supported by substantial evidence. In support of her motion, Sanchez cited the lack of any expert testimony setting forth the standard of care applicable to home health care providers such as Western. In opposition to the motion, defendants argued that expert testimony is not required on matters that are within the common experience of lay jurors. The trial court denied the motion based on its determination that lay jurors are as qualified as any expert to assess whether Western was negligent in allowing Sanchez to work in a home where Kavanaugh was permitted to smoke in bed while unsupervised.

## DISCUSSION

### I. *Judgment Notwithstanding the Verdict Was Properly Denied*

The denial of a motion for judgment notwithstanding the verdict is reviewed for substantial evidence to support the verdict. (*Dell'Oca v. Bank of*

---

[5] According to Sanchez:

(1) The $603,000 economic damages award is 66.7774 percent of the total damages award of $903,000 ($603,000 / $903,000 = 0.667774).

(2) Multiplying the workers' compensation benefits of $272,622.38 by 0.667774, produces a *Witt v. Jackson* offset of $182,050.13 ($272,622.38 x 0.667774 = $182,050.13).

(3) Adding the (reduced) noneconomic damages award of $150,000 to the economic damages award of $603,000, and subtracting the *Witt v. Jackson* offset of $182,050.13, results in a final judgment of $570,949.87 ($150,000 + $603,000 - $182,050.13 = $570,949.87).

*New York Trust Co., N.A.* (2008) 159 Cal.App.4th 531, 554–555 [71 Cal.Rptr.3d 737].) If the ruling involves a purely legal question, however, it is reviewed de novo. (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 284 [73 Cal.Rptr.2d 596].)

Sanchez contends that her motion for judgment notwithstanding the verdict should have been granted because the jury's finding of employer negligence was not supported by substantial evidence. Sanchez cites the following grounds for reversal: (1) the lack of evidence of a breach of a duty of care owed by Western to Sanchez; (2) the failure to instruct the jury on the duty of care owed by Western to Sanchez; (3) Western's conduct (advising Kavanaugh about the hazards of smoking and recommending the purchase of air purifiers)[6] did not establish a violation of a duty of care to Sanchez, given that her injuries were caused by a fire and there was no expert testimony that an air purifier would have prevented the fire, assisted in Kavanaugh's rescue, or protected Sanchez from burns and smoke inhalation; (4) the lack of evidence that cigarettes or lighters were provided to Kavanaugh by Sanchez (or any other Western employee); (5) the jury's finding that Sanchez's negligence was not a substantial factor in causing her own injuries; and (6) the lack of expert testimony to establish the standard of care owed by a home health care provider to its employees.

### A. *Sanchez Did Not Appeal from the Judgment*

Sanchez filed a motion in limine[7] seeking to establish, as a prerequisite to the defense of employer negligence, the necessity of expert testimony to define the standard of care applicable to home health care providers. After the motion in limine was denied, defendants presented their defense of employer negligence without producing any expert testimony to establish the duty of care owed by a home health services provider to its employees.

The jury received ordinary negligence instructions as to Sanchez's claim of negligence against Kavanaugh and defendants' defense of comparative fault

---

[6] The evidence showed that, in response to Kavanaugh's smoking, Sanchez's supervisor had recommended and purchased air purifiers for the house. Sanchez's contention, as we understand it, is that the jury could not assess the adequacy or inadequacy of this response (providing air purifiers) without the assistance of an expert witness.

[7] We note that neither the motion nor the opposition to the motion was included in the record on appeal.

against Sanchez and Western.[8] The jury received no specific instruction on standard of care and the record does not reveal whether any was requested.

After the time to appeal from the judgment had expired, Sanchez appealed from the order denying her motion for judgment notwithstanding the verdict.[9] As a result of her failure to appeal from the judgment, Sanchez has forfeited any claim of error as to (1) the denial of her motion in limine seeking to establish the necessity of expert testimony concerning the standard of care

---

[8] "Negligence" was defined for the jury as "the failure to use reasonable care to prevent harm to oneself or to others. A person can be negligent by acting or by failing to act. A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation."

As to defendants' defense of Western's comparative negligence, the jury was instructed: "Defendant Dorothea B. Kavana[u]gh claims that the negligence of Western Health Resources was also a substantial factor in causing Lydia Sanchez' harm.

"To succeed on this claim, defendant Dorothea B. Kavana[u]gh must prove both of the following:

"One: That Western Health Resources was negligent.

"And two: That the negligence of Western Health Resources was a substantial factor in causing Lydia Sanchez' harm."

The jury received the following instruction on causation:

"A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

"Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct. A person's negligence may combine with another factor to cause harm.

"If you find that Dorothea Kavana[u]gh's negligence was a substantial factor in causing Lydia Sanchez' harm, then Dorothea Kavana[u]gh is responsible for the harm. Dorothea Kavana[u]gh cannot avoid responsibility just because some other person, condition or event was also a substantial factor in causing Lydia Sanchez' harm."

[9] An order denying a motion for judgment notwithstanding the verdict is directly appealable. (Code Civ. Proc., § 904.1, subd. (a)(4).) On September 23, 2010, Sanchez timely appealed the July 23, 2010 order denying her motion for judgment notwithstanding the verdict.

Even if we were to liberally construe Sanchez's notice of appeal to encompass an appeal from the judgment, the purported appeal from the judgment would be untimely. By the time Sanchez filed her notice of appeal on September 23, 2010, the time to appeal from the May 20, 2010 judgment had already expired. None of the extensions provided by California Rules of Court, rule 8.108 alter this fact. The extension provided by California Rules of Court, rule. 8.108(d) applies only where a *valid* motion for judgment notwithstanding the verdict is filed and denied. In this case, Sanchez's motion for judgment notwithstanding the verdict was *not* valid because it was *not* timely filed within 15 days of the date of service of notice of entry of judgment. (Code Civ. Proc., §§ 629, 659.) Notice of entry of judgment was served on May 28, 2010, but Sanchez did not file her motion for judgment notwithstanding the verdict until June 17, 2010, more than 15 days later. Moreover, the 20-day extension provided by California Rules of Court, rule 8.108(g)(1) for the filing of a cross-appeal had expired on June 23, 2010 (20 days after the superior court clerk served notification of defendants' appeal on June 3, 2010), well before the notice of appeal was filed on September 23, 2010.

applicable to Western and (2) the jury instructions (or lack thereof) concerning the comparative negligence defense and the standard of care owed by a home health services provider to its employee.

   B.   *The Case Was Tried on the Theory That Whether Western Satisfied the Standard of Care Involved a Question of Fact Arising Under the "Common Knowledge" Exception*

At the hearing on plaintiff's motion for judgment notwithstanding the verdict, the trial court found the evidence reasonably supported the jury's finding that Western was negligent in allowing Sanchez to work in a home where Kavanaugh was permitted to smoke in bed while unsupervised and without imposing any rules or restrictions on her smoking in order to reduce the risk of fire. The trial court pointed out that Western could "have put in place rules and regulations . . . telling Lydia Sanchez what she could or could not do in regards to allowing Mrs. Kavana[u]gh to smoke and to smoke in bed without any precautions taken." In the trial court's opinion, expert testimony was not required to establish a standard of care because "a lay person could certainly understand and recognize and come to grips with" the ordinary hazards of smoking in bed.

In response, Sanchez's counsel stated: "I think the Court is absolutely correct when you say that the issue is, could they, for example, implement rules? Could—what should they have done in supervising, for example, Lydia Sanchez, and telling Lydia Sanchez, here's what you should or shouldn't do? What should they have done in terms of preparing policies and procedures and protocol? [¶] THE COURT: Independent of what she [(Sanchez)] does. [¶] MR. LALLANDE [(Sanchez's counsel)]: The problem is, Your Honor, that you're now saying that a lay jury that is not in the business of providing health care is now going to sit there and say, we think without any—without any evidence to guide them whatever, nothing. I mean, there's no testimony to guide them whatever—in terms of expert testimony—that they are supposed to now come up with a standard of care as to what regulations should exist. Perhaps one juror thinks that the regulation should be that she shouldn't be allowed to smoke at all in the house, because, by the way, she's an infirm[] little old lady. Perhaps another juror thinks, hey, it's her house. She can smoke anywhere she wants. [¶] THE COURT: Could they not say, if we're going to give care, you can't smoke?"

Sanchez's counsel replied that it was unclear whether a licensed medical care provider such as Western could simply deny care based on a client's refusal to stop smoking. Counsel argued there was "a question of whether that is an appropriate policy and procedure." "[T]he issue of whether—how— what policies and procedures they create is an issue for an expert."

The trial court inquired: "Well, why does that require expert testimony to say, well, Mrs. Kavana[u]gh we're not going to provide you any type of care as long as you continue to smoke?" "And if we do provide you care, there's going to be a fire extinguisher here, there, whatever. I mean, just common sense would tell you that." The trial court concluded it was within the realm of common knowledge whether Western had an independent duty "[t]o set some sort of rules and regulations about allowing [Mrs. Kavanaugh] to smoke," such as "she can or cannot, or she can't have cigarettes next to her bed, or, you know, something."

■ Generally, expert testimony is required to establish the standard of care that applies to a professional. However, an exception exists where the circumstances fall within the realm of common knowledge. "In negligence cases arising from the rendering of professional services, . . . the standard of care against which the professional's acts are measured remains a matter peculiarly within the knowledge of experts. Only their testimony can prove it, unless the lay person's common knowledge includes the conduct required by the particular circumstances. (*Flowers* v. *Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001 [35 Cal.Rptr.2d 685, 884 P.2d 142].)" (*Unigard Ins. Group v. O'Flaherty & Belgum* (1995) 38 Cal.App.4th 1229, 1239 [45 Cal.Rptr.2d 565].)

■ The trial court found that the risk of causing a fire by smoking in bed is well within the realm of common knowledge. The trial court held that because common sense is sufficient to ascertain the protective actions that are reasonably required when an elderly person with impaired vision and mobility wishes to smoke in bed, the conduct required under the circumstances may be established without expert testimony. The trial court concluded that expert testimony was unnecessary because the particular circumstances were not "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801, subd. (a).)

■ We conclude the trial court was correct. No special knowledge or skills are required to "supply the 'common sense' [needed] to prevent harm from everyday hazards." (*Marshall v. McMahon* (1993) 17 Cal.App.4th 1841, 1849 [22 Cal.Rptr.2d 220].) Given that the risk of fire posed by smoking in bed is commonly understood, no professional skills were necessary to determine an appropriate response under the circumstances. Lay jurors are as capable as experts in assessing the adequacy of Western's lack of response to the obvious risk of fire in this case.

We distinguish cases such as *Jacoves v. United Merchandising Corp.* (1992) 9 Cal.App.4th 88, 106 [11 Cal.Rptr.2d 468], where expert testimony was required to establish the applicable standard of care. In that case, expert

testimony on the standard of care was necessary because the "[d]iagnosis, treatment and care of a schizophrenic and suicidal psychiatric patient, and the standard of care prevailing in the medical community for such patients" were outside the scope of common knowledge. (*Ibid.*)

Our case is analogous to *Ewing v. Northridge Hospital Medical Center* (2004) 120 Cal.App.4th 1289 [16 Cal.Rptr.3d 591], which held that expert testimony was not required to establish a psychotherapist's liability for failure to warn a third person of a patient's violent propensities under Civil Code section 43.92. Even though *Ewing* involved a negligence claim against a licensed medical professional, expert testimony on the standard of care was not necessary because, as the court explained: "A psychotherapist may be held liable for failure to warn under section 43.92 only if the jury is persuaded the therapist actually believed or predicted his or her patient posed a serious risk of inflicting grave bodily injury upon an identifiable victim. Applied here, this rule means simply that, because there is no need for expert guidance on the 'standard of care' for psychotherapists' statutory duty to warn, the court erred when it found, as a matter of law, that plaintiffs could not establish their claim without presenting expert testimony. If resort to expertise is unnecessary, so is the expert. [Citations.] Under section 43.92, liability is not premised on a breach of the standard of care. Instead, it rests entirely on the fact finder's determination that each factual predicate is satisfied: the existence of a psychotherapist-patient relationship; the psycho-therapist's actual belief or prediction that the patient poses a serious risk of inflicting grave bodily injury; a reasonably identifiable victim; and the failure to undertake reasonable efforts to warn the victim and a law enforcement agency. [Citations.]" (120 Cal.App.4th at pp. 1301–1302, fn. omitted.)

Similarly, in this case, the jury was instructed that in order to establish their comparative negligence defense, defendants "must prove both of the following: One: That Western Health Resources was negligent. And two: That the negligence of Western Health Resources was a substantial factor in causing Lydia Sanchez' harm." The comparative negligence defense rested entirely on the jury's determination that the elements of negligence and causation were proven, not in terms of a standard of care applicable to medical professionals, but in terms applicable to ordinary persons. Negligence was defined simply as "the failure to use reasonable care to prevent harm to oneself or to others. A person can be negligent by acting or by failing to act. A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation."

Given the manner in which the case was tried, the standard of care for medical professionals was not at issue. The issue was whether Western had

behaved in a manner consistent with that of a reasonably careful person under the same circumstances. Given that an expert's opinion would not have assisted the jury to measure Western's conduct against that of a reasonably careful person, we conclude that "[i]t would be improper to reverse a jury's verdict on the ground of a refusal to admit expert testimony on a subject of common experience." (*Westbrooks v. State of California* (1985) 173 Cal.App.3d 1203, 1210 [219 Cal.Rptr. 674] [upheld the exclusion of expert testimony that a collapsed bridge did not constitute a dangerous condition of property in light of efforts taken to divert traffic away from the collapsed bridge].)

As the hazards of smoking in bed are well understood, lay jurors are capable of assessing Western's lack of response to those hazards without the benefit of expert testimony. Given the lack of evidence that any fire-preventative measures were taken by Western (such as offering a second caregiver who would stay awake during the night, or removing all matches and cigarettes from Kavanaugh's bedroom at night), the record contains substantial evidence to support the finding of employer negligence.

## II. *The Judgment Is Reversed in Part as to Damages*

Defendants contend that because Sanchez's medical bills of $575,000 were paid by Western at the reduced amount of $241,818.38, Sanchez's award for past medical expenses must be capped at $241,818.38. (Citing *Hanif, supra,* 200 Cal.App.3d at p. 640; *Nishihama, supra,* 93 Cal.App.4th at pp. 306–307.)

### A. *Under Workers' Compensation Law, the Employer Must Pay in Full the Employee's Medical Expenses for Job-related Injuries*

■ Defendants point out that under the workers' compensation law, employees are not liable for medical bills incurred as a result of injuries sustained in the course and scope of employment. As the court explained in *Boehm & Associates v. Workers' Comp. Appeals Bd.* (2003) 108 Cal.App.4th 137, 142 [133 Cal.Rptr.2d 396]: "Workers' compensation was introduced into California law in 1911, with the passage of the Roseberry Act (Stats. 1911, ch. 399, § 3, pp. 796–797). (*Mathews v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719, 729 [100 Cal.Rptr. 301, 493 P.2d 1165].) Later, the Legislature enacted the Workmen's Compensation Insurance and Safety Act of 1917 (Stats. 1917, ch. 586, p. 831), which was codified in 1937 (Lab. Code, § 3200 et seq.) and is essentially the current workers' compensation law. (1 Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2002) § 1.2, p. 4.) California workers' compensation law provides a compulsory and exclusive scheme for compensating injured workers without regard to fault. (*Id.* at § 1.3, p. 5.) Once employment and industrial causation are determined, the

employer is responsible for *all* medical expenses incurred. (*Granado v. Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399, 405–406 [71 Cal.Rptr. 678, 445 P.2d 294].) 'The fundamental policy underlying the workers' compensation laws is that those hiring others to perform services should bear the risk of injuries incurred in the undertakings.' (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5, 13 [219 Cal.Rptr. 13, 706 P.2d 1146].)"

■ Defendants state that "the workers' compensation laws limit a health-care provider's ability to balance-bill an injured employee for charges the employer does not pay. Absent an agreement with an employer or an employer's insurer, the official medical fee schedule establishes the reasonable maximum medical expenses allowable for work-related injuries. (Lab. Code, §§ 4603.2, 5307.1.) And Labor Code § 4600 prohibits attempts to seek payment from the injured worker for medical treatment above the reasonable fee established by the fee schedule."

## B. *The* Howell *Decision*

■ While this appeal was pending, the California Supreme Court issued its opinion in *Howell, supra,* 52 Cal.4th 541. The court held in *Howell* that where a private medical insurance carrier pays an injured person's medical expenses at a reduced rate pursuant to a preexisting contract with the provider, the injured person may not recover from the tortfeasor, as economic damages for past medical expenses, the unpaid balance stated in the provider's bill. Although *Howell* involved private medical insurance rather than workers' compensation benefits, the situations are sufficiently similar and the language in *Howell* sufficiently broad to compel the conclusion that this case is governed by *Howell.*

According to *Howell*: "When a tortiously injured person receives medical care for his or her injuries, the provider of that care often accepts as full payment, pursuant to a preexisting contract with the injured person's health insurer, an amount less than that stated in the provider's bill. In that circumstance, may the injured person recover from the tortfeasor, as economic damages for past medical expenses, the undiscounted sum stated in the provider's bill but never paid by or on behalf of the injured person? We hold no such recovery is allowed, for the simple reason that the injured plaintiff did not suffer any economic loss in that amount. (See Civ. Code, §§ 3281 [damages are awarded to compensate for detriment suffered], 3282 [detriment is a loss or harm to person or property].)

■ "The collateral source rule, which precludes deduction of compensation the plaintiff has received from sources independent of the tortfeasor from

damages the plaintiff 'would otherwise collect from the tortfeasor' (*Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 6 [84 Cal.Rptr. 173, 465 P.2d 61] (*Helfend*)), ensures that plaintiff here may recover in damages the amounts her insurer paid for her medical care. The rule, however, has no bearing on amounts that were included in a provider's bill but for which the plaintiff never incurred liability because the provider, by prior agreement, accepted a lesser amount as full payment. Such sums are not damages the plaintiff would otherwise have collected from the defendant. They are neither paid to the providers on the plaintiff's behalf nor paid to the plaintiff in indemnity of his or her expenses. Because they do not represent an economic loss for the plaintiff, they are not recoverable in the first instance. The collateral source rule precludes certain deductions against otherwise recoverable damages, but does not expand the scope of economic damages to include expenses the plaintiff never incurred." (*Howell, supra,* 52 Cal.4th at pp. 548–549.)

### C. *Applying* Howell *to This Case*

■■■ Applying the court's reasoning in *Howell* to this case, we conclude that where an employer is required under the workers' compensation laws to pay in full an injured employee's medical expenses, the injured employee may not recover, as economic damages from a third party tortfeasor, medical fees that the provider is precluded, either by agreement or by law (including the statutory fee schedule), from collecting from the employer. Because fees that the provider may not collect from the employer under the workers' compensation law do not represent an economic loss for the employee, they are not recoverable in the first instance. (*Howell, supra,* 52 Cal.4th at p. 548.)

Defendants contend that because Western paid Sanchez's medical bills, presumably at the rate set forth in the statutory fee schedule, the judgment must be modified to reflect a correct damages award of $290,727.22. Sanchez argues, however, that the record is silent as to the statutory fee schedule and does not disclose whether Western's payment of $241,818.38 in medical expenses was based on the statutory fee schedule. Sanchez contends that there is no evidence to support a finding that the providers were paid the full amount due under the workers' compensation law.

Given that the decision in *Howell* was issued while this appeal was pending, it is understandable that neither the parties nor the trial court anticipated the type of workers' compensation payment evidence that would be relevant to calculate Sanchez's permissible recovery of past medical expenses from a third party. We therefore find it appropriate to remand the matter to the trial court for the limited purpose of determining the full amount owed by Western to the medical care providers under the workers' compensation law. That amount will establish the past medical expenses that are

recoverable by Sanchez as economic damages from defendants, and will be used in the calculation of the *Witt v. Jackson* offset and revised damages award.

## DISPOSITION

As to Sanchez's appeal, the order denying judgment notwithstanding the verdict is affirmed. As to defendants' appeal, the judgment is reversed in part as to damages only and the matter is remanded for a limited hearing and recalculation of damages in accordance with the views set forth in this opinion. Defendants are entitled to their costs on appeal.

Epstein, P. J., and Manella, J., concurred.