Filed 11/18/13  Ricardez v. Tedesco CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ADRIAN RICARDEZ,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID TEDESCO, et al.,<br><br>    Defendants and Appellants. | 2d Civil No. B237903<br>(Super. Ct. No. 1301059)<br>(Santa Barbara County) |

In this personal injury action, David Tedesco, Farmers Insurance Exchange, and Vail & Stub appeal from a judgment entered after a jury verdict in favor of Adriana Ricardez, respondent.  They also appeal from an order denying their motion for judgment notwithstanding the verdict.

Respondent was injured in a multi-vehicle collision.  Tedesco rear-ended her vehicle.  Appellants contend that (1) the evidence is insufficient to support the jury's finding that Tedesco's negligence was a substantial factor in causing respondent's injury, (2) the trial court gave an erroneous response to the jury's question concerning discovery of Tedesco's cell phone records, (3) the judgment must be reversed because one of the jurors was disqualified from jury service by a prior felony conviction, and (4) the trial court erroneously admitted evidence of the amount billed for respondent's

past medical care. We reduce the damages award for past medical expenses from $187,991.02 to $179,237.11. In all other respects, we affirm.

*Respondent's Evidence*

In July 2006 respondent, who was 25 years old, was driving a vehicle on the 101 Freeway. She was employed by Santa Barbara County and was on her way back to work after a training session. The traffic ahead of her came to a stop, and so did respondent. Tedesco was driving a Dodge Charger directly behind her. Tedesco rear-ended respondent's vehicle, forcing it into a Honda Civic that was stopped in front of her. Respondent testified that the impact "shook [her] up."

After respondent's vehicle struck the Honda Civic, respondent felt a second impact from the rear. Respondent testified that the second impact "was hard, but not as [hard] as the first one." The second impact occurred when a pick-up truck driven by Clifton McCorkendale rear-ended Tedesco's Dodge Charger, forcing it into respondent's vehicle. McCorkendale estimated that he was travelling at five to ten miles per hour when he struck the Dodge Charger. Jesse Wobrock, respondent's accident reconstruction expert, opined that the first rear impact was approximately twice the force of the second impact.

*Appellants' Evidence*

Tedesco was an attorney employed by appellant Farmers Insurance Exchange (Farmers). He worked at the law firm of appellant Vail & Stub, which served as in-house counsel for Farmers. The Dodge Charger he was driving was the property of a leasing company owned by Farmers.

Tedesco testified that he had come to a full stop behind respondent's vehicle without striking the vehicle. McCorkendale's truck then rear-ended him. The force of the collision pushed his Dodge Charger into respondent's vehicle. Thus, there was only one impact to the rear of respondent's vehicle, and McCorkendale was solely responsible for that impact.

Jai Singh, appellants' accident reconstruction expert, opined that the Honda Civic, respondent's vehicle, and Tedesco's Dodge Charger "were all at a stop before

2

the occurrence of [the collision involving McCorkendale's truck] without any antecedent or prior impacts occurring between the vehicles."

*Respondent's Injury*

The collisions caused the rupture of a disc in respondent's back. The ruptured disc compressed a nerve root. Respondent suffered pain in her back and right leg. To correct the problem and alleviate the pain, respondent underwent two back surgeries. As a result of the surgeries, there is no longer significant compression of respondent's nerves. But the surgeries did not alleviate her pain, which spread to the left leg.

Dr. Stephen Nagelberg, appellants' medical expert, opined that respondent "[u]nquestionably" will suffer chronic pain for the rest of her life. It is "problematic" whether she will be able to work.

*Verdict*

The jury returned a special verdict. It found that Tedesco and McCorkendale had been negligent and that the negligence of each had been a substantial factor in causing harm to respondent. It also found that Tedesco had been acting within the scope of his employment.

The jury awarded respondent damages of $3,890,625.46. It found that Tedesco was responsible for 64 percent and McCorkendale was responsible for 36 percent of the damages. The damages included the amount billed for respondent's past medical care: $284,125.46.

*Reduction of Damages for Past Medical Care*

Respondent requested that damages for past medical care be reduced to the amount paid by respondent's employer, Santa Barbara County, pursuant to California's workers' compensation law. The request was based on *Hanif v. Housing Authority* (1988) 200 Cal.App.3d 635. There, the appellate court held that "an injured plaintiff may [not] recover from the tortfeasor more than the actual amount he paid or for which he incurred liability for past medical care and services." (*Id*., at p. 640.)

Respondent argued: "According to [Santa Barbara County's] Statement of Damages, [it] paid approximately $187,991.02 on behalf of [respondent] for her past

3

medical care related to the subject accident.  Consequently, since the jury awarded [respondent] $284,125.46 in past medical expenses, [appellants] are entitled to a reduction of the past economic damages in the amount of $96,134.44 . . . ."  (Bold and underlining omitted.)

The trial court reduced the past medical care damages as respondent had requested.  The court stated that it had accepted "the representations of [respondent] and the county that the [county's] lien as it exists today for medical care is $187,991.02."

*Sufficiency of the Evidence*

Appellants contend that the evidence is insufficient to support the jury's finding that Tedesco's negligence was a substantial factor in causing respondent's injury. Appellants argue that respondent "failed to prove Tedesco's conduct was a cause of her harm because she alleged multiple impacts but did not show the driver or impact that caused her harm."

" 'It is the duty of an appellant who claims insufficiency of the evidence, as here, "to demonstrate that there is no substantial evidence to support the challenged findings" [citation].' "  (*In re Edwards' Estate* (1959) 173 Cal.App.2d 705, 711, 344 P.2d 89.)  "[U]nder the substantial evidence test, the court views the evidence in a light most favorable to the respondent."  (*Orange County Employees Assn. v. County of Orange* (1988) 205 Cal.App.3d 1289, 1293.)  "[A]ll conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. . . . [T]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury."  (*Crawford v. Southern Pac. Co.* (1935) 3 Cal.2d 427, 429.)

Where, as here, multiple independent tortfeasors cause an indivisible injury, "a plaintiff is not required to prove that a tortfeasor's conduct was *the sole* proximate cause of the injury, but only that such negligence was *a* proximate cause.  [Citations.] This result follows from Civil Code section 1714[, subdivision (a)]'s declaration that

4

'[e]very one is responsible . . . for an injury occasioned to another by his want of ordinary care or skill. . . .' A tortfeasor may not escape this responsibility simply because another act - either an 'innocent' occurrence such as an 'act of God' or other negligent conduct - may also have been a cause of the injury." (*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 586.) A tortfeasor's negligence was a proximate cause of an injury if it was a substantial factor in bringing about that injury. (*Jackson v. Ryder Truck Rental, Inc.*(1993) 16 Cal.App.4th 1830, 1847.)

Respondent, therefore, was not required to show which rear impact caused her injury. She was required to show that the first impact, which occurred when Tedesco rear-ended her vehicle, was a substantial factor in bringing about her injury. Because the first impact was significantly more forceful than the second impact, which occurred when McCorkendale's truck rear-ended Tedesco's Dodge Charger, substantial evidence supports the jury's finding that the first impact was a substantial factor in bringing about respondent's injury. Respondent testified that the second impact "was hard, but not as [hard] as the first one." Respondent's accident reconstruction expert opined that the first impact was approximately twice the force of the second one. There is no reqirement that respondent present expert testimony that a certain percentage of damages relates to a first collision and another percentage of damages relates to a second collision.

*Court's Response to Jury's Question about Discovery of Cell Phone Records*

Respondent and her passenger, Eloisa Garcia, testified that they had seen Tedesco talking on his cell phone after the collision. Tedesco testified that he had talked on his cell phone after, not before, the collision. He acknowledged that respondent's counsel had requested his cell phone records for the time of the collision, but he had not produced them. Tedesco claimed that the records were unavailable. Tedesco's cell phone company was Verizon.

During closing argument, Farmers' counsel said: "Cell phone records. This gentleman [respondent's counsel] could have subpoenaed the cell phone records. Why do we have to get something that is consistent with what Mr. Tedesco said [i.e., that he

5

had talked on his cell phone after the collision]?  In rebuttal, respondent's counsel said that Tedesco was required "to do everything in his reasonable power to obtain something that [respondent's counsel] request[ed.]"  Counsel noted that he had requested Tedesco's cell phone bill, but Tedesco made no effort to produce it:  "[H]is response is that, 'It no longer exists.  I don't have it.' . . . [T]hey come in here and act as though the onus is on me when the onus truly in discovery is on them when I request that information."  Appellants did not object.

During deliberations, the jury submitted the following question to the court: "What are the procedural options for requesting evidence or documentation, such as cell phone records[?]  What options were used in this case to obtain Mr. Tedesco's cell phone records[?]"  Over appellants' objection, the court responded: "You have all of the evidence on which you must base your verdict.  We cannot provide you additional documents such as Mr. Tedesco's phone records.  [¶]  Before trial each side had the right to request the production of documents from the other side.  You may refer back to Mr. Tedesco's testimony under cross[-]examination by [respondent's counsel] for clarification regarding the phone records if you wish."

Appellants contend :  "A party properly responds to a document request by stating it cannot comply 'because the particular item or category . . . has never been, or is no longer, in the possession, custody or control of the responding party.'  (Code Civ. Proc., § 2031.230.)  Because Tedesco did not possess his cell phone records, he was not required to produce them. . . . The court should have instructed the jury that [respondent's] inspection demand did not obligate Tedesco to serve a subpoena to obtain the documents sought by [respondent], and that the parties had an equal opportunity to subpoena these records from Tedesco's cell phone carrier."

We review the trial court's response for an abuse of discretion.  (*People v. Waidla*  (2000) 22 Cal.4th 690, 745-746 ["An appellate court applies the abuse of discretion standard of review to any decision by a trial court to instruct, or not to instruct, in its exercise of its supervision over a deliberating jury"].)  The trial court did not abuse its discretion.  Its response was legally correct.  The court was not required

to instruct the jury on discovery law. In their reply brief, appellants argue that "the jury was . . . misled by the trial court's instruction that [respondent] had a *right* to [cell phone] records." But the trial court did not so instruct. It instructed that respondent "had the right *to request* the production of documents from the other side."

Appellants' proposed response, on the other hand, would have been legally incorrect. The parties did not have an equal opportunity to subpoena Tedesco's cell phone records because Tedesco's cell phone company, Verizon, is a public utility. (Pub. Util. Code, § 216, subd. (a) [" 'Public utility' includes every . . . telephone corporation . . . where the service is performed for, or the commodity is delivered to, the public or any portion thereof"].) Respondent could not have subpoenaed Tedesco's cell phone records from a public utility without his signed consent: "A subpoena duces tecum for personal records maintained by a telephone corporation which is a public utility, as defined in Section 216 of the Public Utilities Code, shall not be valid or effective unless it includes a consent to release, signed by the consumer whose records are requested, as required by Section 2891 of the Public Utilities Code." (Code Civ. Proc., § 1985.3, subdivision (f).)

Even if the trial court had abused its discretion, appellants would not be entitled to a reversal because they failed to "show it is reasonably probable [they] would have obtained a more favorable result . . . had the error . . . not occurred." (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1015; see also *Putensen v. Clay Adams, Inc.* (1970) 12 Cal.App.3d 1062, 1082.) At worst, the alleged error led the jury to infer that Tedesco had not produced his cell phone records because they would have shown that he had been talking on his cell phone at the time of the collision. The court instructed the jury: "You may consider whether one party intentionally concealed or destroyed evidence. If you decide that a party did so, you may decide that the evidence would have been unfavorable to that party." But the issue before the jury was not whether Tedesco had been talking on his cell phone. The issue was whether Tedesco had rear-ended respondent's vehicle before the collision with McCorkendale's truck.

7

Irrespective of whether Tedesco was talking on his cell phone at the time of the collision, there is convincing evidence that he rear-ended respondent before the collision with McCorkendale's truck. Respondent and her passenger, Eloisa Garcia, so testified. In addition, Sergio Rangel, the driver of the Honda Civic that was struck from behind by respondent's vehicle, corroborated respondent's and Garcia's testimony: "I was sitting in traffic in the left lane near the Summerland exit, and I look in my rearview mirror, I see the ladies behind me, and I see a third car coming. It hits them, they hit me, then I see the truck come in last." Moreover, McCorkendale testified that, immediately after the collision, both respondent and Rangel had said they felt two rear impacts. Thus, if the trial court had given appellants' proposed response to the jury's question, it is not reasonably probable that the jury would have found that there was only one rear impact caused by McCorkendale's collision with Tedesco's Dodge Charger.

*Juror's Felony Conviction*

Appellants argue that the judgment must be reversed because one of the jurors was disqualified from jury service by a 1998 Texas felony conviction. (Code Civ. Proc., § 203, subd. (a)(5) ["Persons who have been convicted of . . . a felony, and whose civil rights have not been restored," are not qualified to serve as jurors].) The juror pleaded guilty to grand theft. The Texas trial court "deferr[ed] further proceedings without entering an adjudication of guilty." It placed the juror "on community supervision" for three years. The juror's attorney in the Texas case declared under penalty of perjury: "As a result of successfully completing the community supervision requirements, the Court never proceeded to enter an adjudication of guilty . . . . Rather, the Court discharged [the juror] and the [the juror] was never convicted of a felony."

Appellants concede: "For purposes of Texas law, [the juror's] deferred adjudication is not considered a conviction [citation] and would not disqualify [him] from jury service after completion of the community supervision period and dismissal

8

of the proceedings [citation]."  But appellants contend that California law is controlling and that under California law the juror was disqualified from jury service.

In California " ' "[a] plea of guilty constitutes a conviction."  [Citation.]' Citation.]  'Indeed, it is settled that for purposes of a prior conviction statute, a conviction occurs at the time of entry of the guilty plea.'  [Citation.]"  (*People v. Laino* (2004) 32 Cal.4th 878, 895-896.)  "But there is . . . an exception to [this] general rule.  Where a civil penalty, such as disenfranchisement or debarment from office, follows as a consequence of the conviction, the conviction is held not to occur until the sentence has been pronounced.  [Citations.]"  (*People v. Davis* (2010) 185 Cal.App.4th 998, 1001; see also *People v. Martinez* (1998) 62 Cal.App.4th 1454, 1460 [for " 'statutes which address the civil consequences of a conviction,' " the term "conviction" has been defined " 'as constituting a final judgment of conviction from which an appeal may be taken' "]; *Helena Rubenstein Internat. v. Younger* (1977) 71 Cal.App.3d 406, 418 ["In the context of statutes or constitutional provisions imposing civil penalties or disabilities, [the term 'conviction' has] never been construed to mean the verdict of guilt.  Such penalties or disabilities have not been found applicable until at least a court judgment has been entered."].)

By disqualifying a convicted felon from jury service, Code of Civil Procedure section 203, subdivision (a)(5) imposes a civil penalty or disability.  (See *Reynolds v. District of Columbia* (D.C. 1992) 614 A.2d 1285, 1289 ["Legislatures in almost every state have imposed various civil disabilities upon persons convicted of felonies, *e.g.,* depriving them of the right to vote, serve on juries, or hold public office"].)  "Where, as here, a civil penalty flows as a consequence of the 'conviction,' the majority and better rule is to require the entry of judgment."  (*Helena Rubenstein Internat. v. Younger*, *supra*, 71 Cal.App.3d at p. 421.)

The Texas court's order of deferred adjudication stated that it was "deferring further proceedings without entering an adjudication of guilty."  Without an adjudication of guilt, there could be no judgment of conviction.  Accordingly, under

9

California law the 1998 Texas conviction did not disqualify the juror from jury service.

*Amount Billed for Respondent's Medical Care*

Appellants argue that the judgment should be reversed for a new trial on damages because the trial court erroneously admitted evidence of the amount billed for respondent's past medical care: $284,125.46. After the jury awarded damages in this amount, the court reduced the award to the amount that respondent's employer had allegedly paid for her past medical care: $187,991.02. Appellants maintain that the court should have excluded evidence of the amount billed and admitted only evidence of the amount paid. They rely on *Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541 (*Howell*), which was decided after the verdicts were rendered.

*Effect of Parties' Stipulation to Amount Billed*

In the trial court the parties stipulated to the total amount billed for respondent's past medical care. Respondent asserts that this stipulation precludes appellants from arguing that the trial court should have excluded evidence of the amount billed. Appellants contend that they are not bound by the stipulation because the law changed after the verdicts were rendered. Appellants assert that, at the time of the trial, "courts were *required* to admit such evidence [i.e., evidence of the amount billed]." Thus, "it would have been futile" for them to have objected. (See *Olsen v. Reid* (2008) 164 Cal.App.4th 200, 204; *Katiuzhinsky v. Perry* (2007) 152 Cal.App.4th 1288, 1296 ["there was no basis in law to prevent the jurors from receiving evidence of the amounts billed, as they reflected on the nature and extent of plaintiffs' injuries and were therefore relevant to [the jury's] assessment of an overall general damage award"]; *Greer v. Buzgheia* (2006) 141 Cal.App.4th 1150, 1157; *Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298, 309 ["There is no reason to assume that the usual rates [the amount billed] provided a less accurate indicator of the extent of plaintiff's injuries than did the specially negotiated rates obtained by Blue Cross. Indeed, the opposite is more likely to be true."].)

10

Appellants note that, after the verdicts were rendered, our "Supreme Court decided *Howell* . . . and held that a plaintiff may recover as economic damages for past medical care no more than the amounts paid for that care." (*Howell*, *supra*, 52 Cal.4th at p. 566.) The Supreme Court further held "that when a medical care provider has, by agreement with the plaintiff's private health insurer, accepted as full payment for the plaintiff's care an amount less than the provider's full bill, . . . evidence of the full billed amount is not itself relevant on the issue of past medical expenses." (***Id***., at p. 567.) It follows that evidence of the full billed amount is inadmissible on this issue. "No evidence is admissible except relevant evidence." (Evid. Code, § 350.) In *Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1334-1335 (*Corenbaum*), the appellate court held that *Howell* applies retroactively to cases pending on appeal. "Although *Howell* involved private medical insurance rather than workers' compensation benefits, the situations are sufficiently similar and the language in *Howell* sufficiently broad to compel the conclusion that this case is governed by *Howell*." (*Sanchez v. Brooke* (2012) 204 Cal.App.4th 126, 141.)

Because *Howell* effected a change in the law that appellants could not have reasonably foreseen, they are not bound by their stipulation. The *Corenbaum* court reached a similar conclusion: "[Defendant's] failure to object to the admission of evidence of the full amounts billed does not preclude him from raising the issue on appeal. An appellant may challenge the admission of evidence for the first time on appeal despite his or her failure to object in the trial court if the challenge is based on a change in the law that the appellant could not reasonably have been expected to foresee. [Citations.]" (*Corenbaum*, *supra*, 215 Cal.App.4th at p. 1334.) Pursuant to our request, the parties have filed supplemental letter briefs discussing the impact of *Corenbaum* on this case.

Respondent argues that *Corenbaum* is distinguishable because, unlike the defendant in that case, appellants did not merely fail to object. They stipulated to the amount of the past medical expenses. But this is a distinction without a material difference. Like the defendant in *Corenbaum*, appellants should not be penalized

11

because they relied on binding case law. (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455 ["Decisions of every division of the District Courts of Appeal are binding upon . . . all the superior courts of this state"].)

Furthermore, appellants stipulated only to the total amount billed, and they apparently did so under pressure from the court. They did not stipulate that the amount billed was admissible. Before the trial began, the court told counsel: "Obviously medical billings are voluminous. They can be potentially time consuming. In past cases I've pressured the parties to meet and confer mid-trial to try to come up with a stipulation regarding the amount of the medical bills. I'm hoping we can work on that behind the scenes. . . . [¶] So I am going to demand of you that we try to do this behind the scenes." Respondent's counsel replied that appellants "don't want to stipulate" to the amount.

In her supplemental letter brief, respondent asserts that appellants "requested that the trial court instruct the jury that the stipulated amount of past medical expenses constituted the plaintiff's past medical expenses." We disregard this assertion because it is not supported by citations to the record. (*Air Couriers Intern. v. Employment Development Dept.* (2007) 150 Cal.App.4th 923, 928 ["We have no duty to search the record for evidence and may disregard any factual contention not supported by proper citations to the record"].)

*Relevance of Amount Billed on Issues of Future Medical*
*Expenses and Noneconomic Damages*

In *Howell* the Supreme Court did not hold that evidence of the amount billed for past medical care is irrelevant and inadmissible for all purposes. The court "express[ed] no opinion as to its relevance or admissibility on other issues [i.e., issues not relating to past medical expenses], such as noneconomic damages or future medical expenses." (*Howell*, *supra*, 52 Cal.4th at p. 567.) Here, the jury awarded respondent $225,000 for past noneconomic losses, $1,750,000 for future noneconomic losses, and $415,000 for future medical expenses.

12

The *Corenbaum* court considered the admissibility of evidence of the amount billed on the issues of noneconomic damages and future medical expenses. "As in *Howell*, the medical providers who treated plaintiffs in [*Corenbaum*] accepted, pursuant to prior agreements, less than the full amount of their medical billings as payment in full for their services." (*Corenbaum*, *supra*, 215 Cal.App.4th at p. 1318.) The *Corenbaum* court determined that "observations in *Howell* compel the conclusion that the full amount billed by medical providers is not relevant to . . . a determination of the reasonable value of future medical services." (*Id*., at pp. 1330-1331.) The court therefore held "that the full amount billed for past medical services is not relevant to the amount of future medical expenses and is inadmissible for that purpose." (*Id*., at p. 1331.) The court continued: "Because the full amount billed for past medical services . . . is not relevant to the value of those services, . . . the full amount billed for those past medical services can provide no reasonable basis for an expert opinion on the value of future medical services. Evidence of the full amount billed for past medical services . . . therefore cannot support an expert opinion on the reasonable value of future medical services. [Citations.]" (*Ibid*.)

As to noneconomic damages, the *Corenbaum* court noted that such "damages compensate an injured plaintiff for nonpecuniary injuries, including pain and suffering. Pain and suffering is a unitary concept that encompasses physical pain and various forms of mental anguish and emotional distress. [Citation.]" (*Corenbaum*, *supra*, 215 Cal.App.4th at p. 1332.) The court held "that evidence of the full amount billed is not admissible for the purpose of providing plaintiff's counsel an argumentative construct to assist a jury in its difficult task of determining the amount of noneconomic damages and is inadmissible for the purpose of proving noneconomic damages." (*Id*., at p. 1333.)

### *Howell* and *Corenbaum Apply Here*

Respondent argues that *Howell* and *Corenbaum* are "limited to situations in which there is evidence that the medical providers, 'by prior agreement, *accepted less than a billed amount as full payment* …' (*Howell*, *supra*, 52 Cal.4th at 567.)"

13

Therefore, respondent asserts, *Howell* and *Corenbaum* are inapplicable here because "there was no evidence presented that the payments by [respondent's] workers' compensation insurer were reduced payments accepted as payments 'in full' by [her] medical providers." But it is reasonable to infer that respondent's employer, Santa Barbara County, made the payments pursuant to an agreement that they be accepted as payment in full. "Medical providers typically enter into agreements with private insurers in which the medical providers agree to accept discounted payments for the services provided to insured patients. [Citation.]" (*Corenbaum*, *supra*, 215 Cal.App.4th at p. 1325.) The county attached to its Statement of Damages a 24-page document listing all of the medical services provided. For each service, the document shows the amount paid and the amount of the "Discount."

In its Statement of Damages, Santa Barbara County declared that it had "incurred" medical costs and expenses of $187,991.02 "in association with" respondent's workers' compensation claim. The use of the word "incurred" implies that the county's known liability did not exceed this amount when the statement was signed. "Incur" means to "become liable [for] or subject to." (Webster's 3d New Internat. Dict. (1981) p. 1146, col. 3.) If the medical providers had not accepted $187,991.02 as payment in full for their services, the county would have incurred medical costs and expenses greater than this amount. "Once employment and industrial causation are determined, the employer is responsible for *all* medical expenses incurred. [Citation.]" (*Sanchez v. Brooke*, *supra*, 204 Cal.App.4th at pp. 140-141.)

*Erroneous Admission of Amount Billed*

An error in admitting evidence is not reversible unless it "resulted in a miscarriage of justice." (Evid. Code, § 353, subd. (b).) " [A] miscarriage of justice should be declared only when the reviewing court, after an examination of the entire cause, including the evidence, is of the opinion that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. [Citation.]" (*Huffman v. Interstate Brands Companies* (2004) 121

14

Cal.App.4th 679, 692.) " 'The burden is on the appellant in every case to show that the claimed error is prejudicial; i.e., that it has resulted in a miscarriage of justice.' [Citation.] . . . '[T]he appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice.' [Citation.]" (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.)

The *Corenbaum* court concluded that the erroneous admission of evidence of the amounts billed for past medical care "was prejudicial because, as the record before us clearly demonstrates, the amounts awarded as damages were based on the full amounts billed rather than the lesser amounts accepted by medical providers as full payment." (*Corenbaum*, *supra*, 215 Cal.App.4th at p. 1333.) The court did not indicate why the record demonstrated that damages were based on the amounts billed.[1] The court "reverse[d] the judgments in favor of [plaintiffs] as to the awards of compensatory damages . . . and remand[ed] the matter with directions to conduct a new trial to determine the amounts of compensatory damages, liability having been established." (*Id*., at pp. 1333-1334, fn. omitted.)

With one exception, appellants have not carried their burden " 'of spelling out in [their] brief[s] exactly how the error [of admitting evidence of the amount billed for past medical care] caused a miscarriage of justice.' [Citation.]" (*In re Marriage of McLaughlin*, *supra*, 82 Cal.App.4th at p. 337.) The exception pertains to the damages for respondent's past medical care. The trial court reduced the jury's award of $284,125.46 to the amount allegedly paid by Santa Barbara County: $187,991.02. But the county's breakdown of its payments shows that this figure included expenses of $8,753.91 for "Photocopy/Witness." In the trial court appellants objected to these

---

[1] In an attempt to remedy this omission in the *Corenbaum* opinion, respondent refers us to the plaintiff's rebuttal closing argument as discussed in appellant's opening brief in *Corenbaum*. We disregard the reference because that brief is not before us. Respondent did not serve and file a motion requesting that we take judicial notice of appellant's opening brief in *Corenbaum*. (See Cal. Rules of Court, rule 8.54; *Chinn v. KMR Property Management* (2008) 166 Cal.App.4th 175, 180, fn. 3.)

expenses.[2]  We agree that they are not legitiment medical expenses.  Accordingly, the damages award for past medical expenses must be reduced by $8,753.91 to $179,237.11.

As to the other damages awards, unlike *Corenbaum* the record does not demonstrate that "the amounts awarded as damages were based on the full amounts billed."  (*Corenbaum, supra,* 215 Cal.App. 4th at p. 1333.)  Appellants have not shown that respondent's counsel argued to the jury that the amount billed for past medical services is relevant to the reasonable cost of future medical services or to the determination of noneconomic damages.  Nor have appellants shown that an expert considered the amount billed for respondent's past medical care in forming his opinion as to the reasonable cost of her future medical care.  Dr. Moelleken opined that respondent would eventually need a one level spinal infusion, which at Cottage Hospital in Santa Barbara would cost $250,000.  His estimate of the cost was based on the amount customarily billed for the procedure.  Nothing in *Howell* or *Corenbaum* precludes an expert from so testifying.  These cases preclude an expert from considering the amount billed for the injured *plaintiff's* past medical care when the medical providers have accepted less than the billed amount as payment in full for their services.[3]  Appellants have not referred us to any evidence suggesting that Dr.

---

[2] "[Appellants' counsel:] [T]here's a total for photocopying, witness charges of $8,700.  [¶]  THE COURT: Yeah.  That's a recoverable cost but it's not a medical expense.  [¶]  [Appellants' counsel]: Right.  That's right.  It should be deducted."  The only other paid medical expense to which appellants specifically objected was "$51,337.45 for the nursing case manager."

[3] "We conclude that evidence of the full amounts billed for *plaintiffs'* medical care was not relevant to the amount of damages for past medical services, damages for their future medical care or noneconomic damages."  (*Corenbaum*, *supra*, 215 Cal.App.4th at p. 1319, italics added.)  "Evidence of the full amount billed for past medical services provided to *plaintiffs* therefore cannot support an expert opinion on the reasonable value of future medical services.  [Citations.]"  (***Id***., at p. 1331.)

16

Moelleken considered the amount billed for respondent's past medical care in estimating her future medical expenses.

## Disposition

The order denying appellants' motion for judgment notwithstanding the verdict is affirmed. The judgment is modified to reduce the damages award for past medical expenses from $187,991.02 to $179,237.11. As modified, the judgment is affirmed. Respondent shall recover her costs on appeal.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

17

Denise De Bellefeuille, Judge

Superior Court County of Santa Barbara

_____

Horvitz & Levy; David M. Axelrad and Robert H. Wright.  Veatch Carlson, Bruce L. Schechter and Peter R. Crossin.  Willis & Depasquale; Larry N. Willis, for David Tedesco, Appellant.

Steven B. Stevens, a Professional Corporation; The Lari-Joni Law Firm, Torsten M. Bassell and Nicole Lari-Joni; Alan H. Fenton, Law Offices of Alan H. Fenton, for Adriana Ricardez, Respondent.